**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANDREA E. CARPENTER,**

                 **Plaintiff,**              **7:12-cv-1759**
                                                                  **(GLS)**

                    **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                 **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Conboy, McKay Law Firm<br>307 State Street<br>Carthage, NY 13619 | LAWRENCE D. HASSELER, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | SIXTINA FERNANDEZ<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. **Introduction**

Plaintiff Andrea E. Carpenter challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Carpenter's arguments, the Commissioner's decision is reversed and remanded.

## II. **Background**

On April 23, 2010, Carpenter filed an application for SSI under the Social Security Act ("the Act"), alleging disability since October 27, 2008. (Tr.[1] at 53, 113-16.) After her application was denied, (*id.* at 54-57), Carpenter requested a hearing before an Administrative Law Judge (ALJ), which was held on August 1, 2011, (*id.* at 60, 26-46). On September 12, 2011, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 10-25.)

Carpenter commenced the present action by filing her complaint on

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

November 29, 2012 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. Contentions

Carpenter contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 11-21.) Specifically, Carpenter claims that the ALJ erred in: (1) assessing the severity of Carpenter's intellectual functioning; (2) failing to find that Carpenter suffers a listing level impairment; (3) rendering a residual functional capacity (RFC) determination that is unsupported by substantial evidence; and (4) substituting her own judgment for competent medical opinion. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 12 at 6-14.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 1-9; Dkt. No. 12 at 1-2.)

### V. Standard of Review

3

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  Severity Determination

First, Carpenter contends that the ALJ failed to properly assess the severity of Carpenter's intellectual functioning. (Dkt. No. 11 at 11-15.) According to Carpenter, in making her severity determination, the ALJ "totally disregarded the consultative intelligence evaluation conducted in 2005 where [Carpenter] scored a [sixty-seven] verbal IQ, [sixty-nine] performance IQ, and a [sixty-five] full-scale IQ," as well as evidence of Carpenter's enrollment in special education classes, inability to manage money, and difficulty with reading comprehension. (*Id.* at 12-14.) The

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) of Title 42 applicable to judicial review of SSI claims.

court disagrees that remand is appropriate on this basis.

At step two of the sequential evaluation, a claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 416.921(b)(3)-(6). An ALJ's evaluation of a claimant's mental impairments must reflect her application of the "special technique" set out in 20 C.F.R. § 416.920a, which necessitates her consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* § 416.920a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or

better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)). Notably, the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

In this case, at step two, the ALJ determined that Carpenter suffered from two severe impairments, namely, degenerative disc disease of the lumbar spine, and obesity. (Tr. at 15.) The ALJ considered Carpenter's "borderline intellectual functioning" and noted her 2005 IQ scores. (*Id.*) However, the ALJ determined that Carpenter's "other records indicate that her intellectual functioning is significantly higher," relying on IQ testing conducted in 2007 upon which Carpenter scored a verbal IQ of eighty, performance IQ of seventy-six, and full-scale IQ of seventy-six. (*Id.* at 16.) The ALJ also made findings in each of the four broad functional categories set out in the regulations, finding that Carpenter suffers mild limitations in

activities of daily living, social functioning, and concentration, persistence, and pace.  (*Id.*)  Thus, the ALJ determined that Carpenter's borderline intellectual functioning does not cause more than minimal limitations on her ability to perform basic mental work activities.  (*Id.*)

Carpenter argues that the ALJ's severity determination is not supported by substantial evidence, as her mental limitations have more than a minimal effect on her ability to perform the basic mental work activities. (Dkt. No. 11 at 12.)  Indeed, only *de minimis* claims may be screened out at step two of the analysis.  *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  Here, Carpenter's IQ scores are in the mild mental retardation and borderline intellectual functioning range.  (Tr. at 165, 167, 194.)  Consultative examiner Richard Williams consistently assigned Carpenter Global Assessment of Functioning (GAF) scores of sixty, indicating moderate symptoms or moderate difficulty in school, work, and social functioning.  (*Id.*); *see Kohler*, 546 F.3d at 262 n.1.  Further, upon examination by Dr. Williams, Carpenter's mental control, short-term recall, and abstract thinking were poor, and her insight was limited.  (Tr. at 164, 167, 193.) Additionally, treating psychiatrist Michael Camillo assigned Carpenter a GAF score of fifty-five and noted that she could "not tell [him]

the number of nickels in [one dollar] after a significant amount of assistance." (*Id.* at 215, 217.) Nevertheless, as the ALJ continued the sequential analysis and considered Carpenter's severe and non-severe impairments in her RFC determination, any error at step two is harmless. (*Id.* at 18-19); *see Tryon*, 2012 WL 398952, at *4.

**B.    Listing 12.05(C)**

Next, Carpenter argues that the ALJ erred in evaluating whether her impairment meets listing 12.05(C). (Dkt. No. 11 at 15-18.) According to Carpenter, the ALJ erred in providing no explanation for favoring Carpenter's 2007 test results over her 2005 results. (*Id.* at 16-17.) The Commissioner counters that the ALJ properly rejected the 2005 test results because they are inconsistent with the 2007 results, and, further, Carpenter did not establish that she had the requisite deficits in adaptive functioning to meet listing 12.05. (Dkt. No. 12 at 9-12.) For the following reasons, the court agrees with Carpenter that remand is required.

At the third step of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 416.920(d). One way to establish disability under section 12.05, which

8

pertains to intellectual disability, is if a claimant shows: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age twenty-two; (2) "[a] valid verbal, performance, or full scale IQ of [sixty] through [seventy];" and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C); *see id.* § 12.00(A) (explaining that an impairment must satisfy "the diagnostic description in the introductory paragraph and any one of the four sets of criteria" in order to meet listing 12.05). "[D]eficits in adaptive functioning 'denotes an inability to cope with the challenges of ordinary everyday life.'" *Carrube v. Astrue*, No. 3:08-CV-0830, 2009 WL 6527504, at *4 (N.D.N.Y. Dec. 2, 2009) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)); *see also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012). This includes consideration of a "claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007).

    Here, Carpenter's 2005 test scores satisfy the IQ requirement of listing 12.05(C). (Tr. at 164); *see* 20 C.F.R. pt. 404, subpt. P, app. 1

§ 12.05(C). However, the ALJ found that Carpenter did not meet the listing because her 2007 IQ scores are too high. (Tr. at 17, 166.) While it is within the purview of an ALJ to "reject an IQ score as invalid when it is inconsistent with the record," *Juckett ex rel. K.J. v. Astrue*, No. 09-CV-708, 2011 WL 4056053, at *7 (N.D.N.Y. June 29, 2011), the ALJ did not indicate any factors that suggest the first test scores were invalid, or explain his decision to adopt the 2007 IQ test results, rather than the 2005 IQ test results. (Tr. at 17); *see Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (finding the ALJ's rejection of the claimant's low IQ scores proper where the claimant was close to completing a bachelor's degree and had taught high school algebra); *see also Clay v. Barnhart*, 417 F.3d 922, 929-31 (8th Cir. 2005) (upholding the ALJ's rejection of two sets of IQ scores where the report on the first set was sufficiently equivocal as to its validity to allow the ALJ to disregard its conclusion, and the test administrator considered the second set invalid). Notably, the regulations do not specify which score an ALJ should rely on when there are differing scores from two apparently valid IQ tests, but they do provide that, when more than one IQ score is reached from the test administered, the Commissioner must use the lowest of these in conjunction with 12.05. *See* 20 C.F.R. pt. 404,

subpt. P, app. 1 § 12.00(D)(6)(c); *see also Coogan v. Astrue*, No. 08-CV-1387, 2009 WL 512442, at *5 n.1, *6 n.2 (D.N.J. Feb. 27, 2009) (stating that an ALJ may not decide which of multiple IQ scores he prefers because the regulations only require one valid score in the range of sixty through seventy); *Ray v. Chater*, 934 F. Supp. 347, 350 (N.D. Cal. 1996) ("[I]t can be inferred that when multiple I.Q. scores are available the [r]egulations prefer the lowest score."). Thus, the court remands this matter to the Commissioner for further analysis to resolve the discrepancy between Carpenter's two sets of IQ scores, mindful that there may be reasons not apparent on the face of the record for continuing to favor the 2007 IQ scores.

The Commissioner suggests that, regardless of Carpenter's IQ scores, Carpenter did not establish that she had deficits in adaptive functioning, and, thus, she failed to meet the threshold requirement of listing 12.05. (Dkt. No. 12 at 10-11.) The Commissioner points to Carpenter's care for her children, graduation from high school, and "extensive activities of daily living" as evidence that Carpenter does not suffer from deficits in adaptive functioning. (*Id.*) However, while the ALJ clearly did not believe that the record as a whole supported a diagnosis of

11

mild mental retardation, (Tr. at 15-19), she failed to specifically address deficits in adaptive functioning—or the listing 12.05(C) requirement of suffering an additional significant limitation—and this is not a situation "[w]here application of the correct legal standard could lead to only one conclusion." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998); (Tr. at 17.) Notably, Carpenter lost custody of her children due to "alleged inadequate care." (Tr. at 301.) Further, she received an IEP diploma from high school, and was subsequently denied enrollment in GED classes because she needed "special one on one help" due to her learning disabilities. (*Id.* at 127, 166, 264.) The record also reflects that Carpenter has never maintained competitive employment, but has worked part-time as a dishwasher, with "intensive on-site support" from a job coach through the St. Lawrence-Lewis BOCES Supported Employment Program. (*Id.* at 312.) Thus, if the Commissioner determines that Carpenter has a qualifying IQ score, the Commissioner is further directed to consider the remaining elements of listing 12.05(C).

**C.** **Remaining Findings and Conclusions**

Because Carpenter's remaining contentions, (Dkt. No. 11 at 18-21), may be impacted by the subsequent proceedings directed by this Order, it

12

would be improper for the court to consider them at this juncture.

## VII. Conclusion

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 5, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court